IN THE UNITED STATES DISTRICT COURT

DISTRICT OF COLORADO

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

SEP 12 2022

JEFFREY P. COLWELL
CLERK

| | |
|---|---|
| OSCAR ARRIOLA, | ) |
| Petitioner, | ) |
| | ) Case No. 1:03-CR-00614-REB |
| Vs. | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent, | ) |
| | ) |

**JUDICIAL NOTICE IN SUPPORT OF PETITION FOR REDUCTION OF SENTENCE (COMPASIONATE RELEASE) PURSUANT TO TITLE 18 U.S.C. 3582 (c)(1)(a).**

On this September 8, 2022, Oscar Arriola ("Arriola"), acting Pro Se, moves this court to take Judicial Notice of its own record and facts that may motivate this Honorable District Court to render relief on his favor.

Mr. Arriola urges that the following facts are not part of any litigation, however, only to add motivation towards a positive rendering for reduction of his sentence.

A. New Developments In Mr. Arriola's Health.

Mr. Arriola in a very respectful manner, presents that in contrast to the government's response to his compassionate release petition stating that prisoners are safe against current spread of COVID-19 inside the prison system, making reference that now

Page 1 of 9

with the vaccine against COVID-19, prisoners like Mr. Arriola are perfectly protected against the possible catastrophic virus, enjoying proper an sophisticated medical care inside prison. While Mr. Arriola concedes that vaccination inside prison brought mental comfort, however, also even when the risks post vaccination are minimum, at least one vaccine has proven ineffective up to date.

The Government in responding to Mr. Arriola's compassionate release clearly presents that despite thousands of inmates that become ill, because of the pandemic crisis, FBOP has acted efficiently in preventing and controlling the virus, creating a safe place for inmates to live inside prison, with sufficient access to health care in these difficult times.

On or about March 21, 2022, Oscar Arriola received his initial vaccination as a requirement by Warden at FCI Bastrop, TX. On April 13, 2022, Mr. Arriola received the second dose of "Pfizer" vaccine for Covid-19. (COVID-19 Vaccine Implementation, BOP, https://www.bop.gov/coronavirus/). Reactions after getting a COVID-19 vaccine can vary from person to person, most people in clinical trials experienced only mild side effects, and some of them had no side effects at all. Some people have no side effects. Many people have reported side effects, such as headache, fatigue, and soreness at the injection site, that are generally mild to moderate and go away within a few days. However, even when limited, adverse events after receipt of Pfizer BioNTech COVID-19 vaccine had been submitted to the Vaccine Adverse Event Reporting System (VAERS). Many case reports were identified for further review as possible cases of severe allergic reaction, including anaphylaxis and other permanent side effects.

People presenting Long-term sequalae post COVID-19 vaccination ere rare. Yet, public records exhibit that people have reported serious complications over the course of post vaccination. Currently, there has been multiple cases known of presenting persistent symptoms and serious complications after the vaccine, Mr. Oscar Arriola presents that he is one of the limited cases experiencing severe acute illness post vaccination.

The clinical records at FCI Bastrop support that after Mr. Oscar Arriola was vaccinated he initiated experiencing several acute illnesses including: blood clots all over his body revealing in the form of bruises, fatigue all the time, headaches, discomfort, muscular weakness, small blood clots during urinating, nervousness, anxiety and irritability, difficulty sleeping and diarrhea.

Even when Warden at FCI, Bastrop introduced that implementation of vaccination at the institution under no obligation and at all times under inmates' discretion, at the same time Warden implemented that upon refusing vaccination inmates would lose many of the prison privileges and could be place in segregation cells (SHU).

Mr. Arriola claims that he was coerced to vaccination and now endures serious collateral damage and injury to his health that may result in death.

The central point here is, that the government was incorrect by describing that Mr. Arriola was protected against any possible risk or threat to his health safety by vaccination against COVID-19. Contrary to government's response Mr. Arriola now endures serious collateral health consequences and even risk of death.

Mr. Arriola prays that this honorable court take "Judicial Notice" of the above facts as they represent "extraordinary and compelling" reasons that support compassionate release and/or reduction of his sentence.

Whether Mr. Arriola's medical condition fall within one of the categories listed in the policy statement pursuant to 18 U.S.C Sec. 3582(c)(1)(A) and U.S.S.G Sec. 1B1.13, cm. n 1(A). Mr. Arriola presents that under the present facts post vaccination he is entitles to compassionate release because he is now after vaccination enduring serious post effects caused by the vaccine. The prison records support that he is in serous risk of death based on blood clots all over his body revealing in the form of bruises that can easily travel to his brain causing brain damage or stroke.

### B. Implementation of The First Step Act 2018-2022

#### 1. Time Credits

As a new development Mr. Arriola relies on the implementation of The First Step Act 2018-2022. Mr. Arriola respectfully invokes for the implementation of The First Step Act's "time credit" system that was implemented on January 15, 2022, which is part of the implementation of The First Step Act 2018. The Act amended 18 U.S.C Sec. 3624(b) so that their imposed sentence rather than for every year of their sentenced served. For example, this change means that an offender sentenced

to 10 years in prison and who earns the maximum good time credits each year will earn 540 days of credit.

The implementation of The First Step Act of 2018-2022, provides eligible inmates the opportunity to earn 10 to 15 days of time credits for every 30 days of successful participation in Evidence Based Recidivism Reduction Programs as Productive Activities. The earned credits can be applied towards earlier placement in pre-release custody, such as RRCs and HC. In addition, at the BOP Director's discretion, up to 12 months of credit can be applied toward Supervised Release. Inmates are eligible to earn Time Credits retroactively back to Dec. 21, 2018, the date the First Step Act was enacted, subject to BOP's determination of eligibility.

Implementation will occur on a rolling basis, beginning with immediate release for inmates whose Time Credits earned exceed their days remaining to serve, are less than 12 months from release, and have a Supervised Release term. Some of these transfers have already begun, and many more will take place in the weeks and months ahead as BOP calculates and applies time credits for eligible incarcerated individuals.

Mr. Arriola is eligible for the earned credits derived from the implementation of the First Step Act 2018-2022. Mr. Arriola moves this honorable to compel the BOP to deduct his earnings toward his sentence and/or grant compassionate release in the form of reduction of his sentence.

2. **Mr. Arriola's Harsh Conditions of Confinement in Mexico Before Extradition and Credit For The Time Spent Awaiting Extradition.**

   a. **Equal Protection**

Mr. Arriola was detained in Mexico on February 3, 2006, through March 2010. Then Mr. Arriola was extradited to the United States to confront the Colorado District Drug Trafficking Charges in this court. Mr. Arriola was not given credit for the 4-year spent in Mexico while he was awaiting extradition to the United States for the crime for which he was sentenced in this court. Arriola presents that other defendant similarly situated extradited from Mexico and sentenced in the District of Colorado including United States v. Miguel Angel Caro-Quintero.

With this in mind, Arriola invokes his Equal Protection rights to present United States v. Miguel Angel Caro-Quintero, (Brother of Notorious Sinaloa Cartel member, Rafael Caro Quintero arrested un the month of August 2022, pending extradition to face criminal charges in the United States, who is wanted over the 1985 kidnapping and murder of U.S. Drug Enforcement Administration (DEA) agent Enrique Camarena), indicted by a federal grand jury in Denver in 1990. Same as Mr. Oscar Arriola, Miguel Anguel Caro-Quintero was extradited to the United States, Caro Quintero was extradited on February 25, 2009. Prior to his extradition, Caro-Quintero was held in custody pending extradition, and served a prison sentence in Mexico for weapons possession crimes. Caro-Quintero had previously admitted to trafficking more than 100 tons of marijuana from 1985 through 1988, resulting in more than $100,000,000 in payment being sent to Mexico. Was sentenced by U.S. District Court Judge Philip A. Brimmer to serve 204 months (17 years) in federal prison, followed by 2 years of supervised release, for his role in operating a large-scale marijuana trafficking organization in Colorado.

Arriola presents that he was sentenced in the same Colorado District Court as Mr. Caro-Quintero and extradited same as Caro-Quintero to the United States after serving time for charges in the Mexican jurisdiction.

The District of Colorado Court granted Mr. Caro Quintero credit for the time he spent in prison awaiting his extradition. On the other hand, in Mr. Arriola's case, the same prosecution involved in Mr. Caro Quintero's case, refuse to accredit him for the time spent in Mexico awaiting his extradition. Mr. Arriola was treated differently that Mr. Caro Quintero even when they were both similarly situated.

Mr. Arriola reflects a release date of July 10, 2028. If he is accredited for the time he spent in Mexico pending extradition 4-years will deduct from this date, which will place Mr. Arriola's new release date in 2024.

In determining whether to grant Mr. Arriola's reduction of sentence or compassionate release, this court should take the above in consideration.

### b. Harsh Conditions of Confinement in Mexico Before Extradition.

Long before the current pandemic, courts had recognized that periods of pre-sentence custody spent in unusually arduous conditions merited recognition by courts in measuring a just sentence. See, e.g., United States v. Carpty, 264 F.3d 191, 196-97 (2d Circ. 2001)(holding that that "pre-sentence confinement conditions may in appropriate cases be a permissible basis for downward departures," and vacating and remanding the defendant's sentence "so that the district court [could] reconsider the defendant's request for a downward departure, and do so in the light of this holding"); United States v. Sanpedro, 352 F. App'x 482, 486 (2d Cir. 200)(summary order)(noting that"[i]n imposing the sentence it did, the district considered… [among other factors,] the harsh conditions of [the defendant's] confinement at Cobita,"in Colombia where he was detained before being extradited to the United States); United States v. Salvador, No. 98 Cr. 484 (LMM) 2006 WL 2034637, at * 4

(S.D.N.Y July 19, 2006)(holding that defendant's pre-sentence condition while incarcerated in the Dominican Republic, awaiting extradition to the United States...warrant a downward departure"); United States v. Torres, No. 01 Cr. 1078 (LMM), 2005 WL 2087818, at * 2 (S.D.N.Y. Aug. 30, 2005)("departing downward, by 1 level, because of the harsh conditions of defendant's pretrial detention").

The same logic applies here. As has been widely chronicled, the defendant's pre-sentence condition while incarcerated, awaiting extradition to the United States...warrant a downward departure.

Now, Mr. Arriola presents that the time he spent awaiting his extradition was extremely harsh, and that based on this factor he is entitled to compassionate release.

The Court has an opportunity to correct an injustice. Mr. Arriola moves for compassionate reduction in his sentence under § 3582(c)(1)(A). Mr. Arreola's criminal conduct does not justify a sentence to such a harsh sentence. If released now, he would be returned to his family in Mexico. Mr. Arriola requests that this Court say, "enough is enough," resentence him, and allow him to return to his family.

The Court must "compelled to exhort the prosecuting U.S. Attorney to revisit and review this case with a critical eye," and "consider taking any available steps toward the remedy of the inauspicious and undeserving fate that has befallen Mr. Arriola.

WHEREFORE, in motivating this honorable court to grant Mr. Arriola's reduction of his sentence, or compassionate relief, Mr. Arriola prays that this honorable court take the above mentioned into account. Mr. Arriola has served a substantial portion of his sentence Now, Mr. Arriola humbly prays that this court

reduce his sentence under a compassionate release relief and/or grant any other relief as this court deems appropriate.

Date: 9/8/2022                                    Respectfully Submitted

*Oscar Arriola*

## CERTIFICATE OF SERVICE

I, Oscar Arriola hereby certify under penalty of perjury, that on this September 8, 2022, I placed a copy of the foregoing Judicial Notice in Support of Petition for Reduction of Sentence (Compassionate Release) Pursuant to Title 18 U.S.C 3582(c)(1)(a), in a Mailbox at the Federal Correctional Institution, Bastrop, TX., affixed and with sufficient postage. A copy of the same was served to the United States Attorney's office for the District of Colorado.

Respectfully Submitted

*Oscar Arriola*

Oscar Arriola
Reg No. 36810-013
Federal Correctional Institution
P.O. Box 1010
Bastrop, TX. 78602

United States District Court
Colorado District
Denver Division
901 19th Street
Denver, Co. 80294

U.S. POSTAGE PAID
FCM LG ENV
EL PASO, TX
79901
SEP 09, 22
AMOUNT
$1.44
R2304W121721

80294